**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| KUMHO P&B CHEMICALS INC.<br><br>          Plaintiff,<br><br>   and,<br><br>KUKDO CHEMICAL CO., LTD., and U.S. EPOXY RESIN PRODUCERS AD HOC COALITION<br><br>          Consolidated Plaintiffs,<br><br>   v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>   and,<br><br>U.S. EPOXY RESIN PRODUCERS AD HOC COALITION<br><br>          Defendant Intervenor,<br><br>   and,<br><br>KUKDO CHEMICAL CO., LTD.,<br><br>          Consolidated Defendant-Intervenor. | **PUBLIC DOCUMENT**<br><br>Consol. Ct. No. 25-cv-00143-GSK |

**PLAINTIFF KUMHO P&B CHEMICALS INC.'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kumho P&B Chemicals Inc.*

July 27, 2026

**TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................. 2

    A.  Commerce's Determination That the Electricity for LTAR Program Is *De Facto* Specific
        Is Unsupported by Substantial Evidence and Is Otherwise Unlawful ................................. 2

II.    CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. United States*,
192 F.3d 1367 (Fed. Cir. 1999)........................................................................................... 4-5

*Bethlehem Steel Corp. v. United States*,
140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001) ...................................................................... 7-8

*Gov't of Quebec v. United States,*
105 F.4th 1359 (Fed. Cir. 2024) .......................................................................................... 3-4

*Hyundai Steel Co. v. United States*,
745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ...................................................................... 4-5

*Hyundai Steel Co. v. United States*,
798 F. Supp. 3d 1283 (Ct. Int'l Trade 2025) ...................................................................... 5-6

*Mosaic Co. v. United States*,
160 F.4th 1340 (Fed. Cir. 2025) .......................................................................................... 8-9

*POSCO v. United States*,
794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ...................................................................... 3-5

*Royal Thai Government v. United States*,
436 F.3d 1330 (Fed. Cir. 2006).............................................................................................5

**Statutes**

19 U.S.C. § 1677.................................................................................................................... 2-4, 6

19 U.S.C. § 3512(d) ...................................................................................................................3

**Other Authorities**

*Certain Epoxy Resins From the Republic of Korea: Final Affirmative*
*Countervailing Duty Determination and Final Negative Critical*
*Circumstances Determination*,
90 Fed. Reg. 14,605 (Dep't Commerce Apr. 3, 2025).................................................... *passim*

Uruguay Round Agreements Act Statement of Administrative Action,
H.R. Rep. No. 103-316, Vol.1 (1994)........................................................................3-4, 6-7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |
|---|---|
| KUMHO P&B CHEMICALS INC. <br><br>      Plaintiff, <br><br>    and, <br><br> KUKDO CHEMICAL CO., LTD., and U.S. EPOXY RESIN PRODUCERS AD HOC COALITION <br><br>      Consolidated Plaintiffs, <br><br>    v. <br><br> UNITED STATES, <br><br>      Defendant, <br><br>    and, <br><br> U.S. EPOXY RESIN PRODUCERS AD HOC COALITION <br><br>      Defendant Intervenor, <br><br>    and, <br><br> KUKDO CHEMICAL CO., LTD., <br><br>      Consolidated Defendant-Intervenor. | **PUBLIC DOCUMENT** <br><br> Consol. Ct. No. 25-cv-00143-GSK |

**PLAINTIFF KUMHO P&B CHEMICALS INC.'S REPLY BRIEF IN**
**SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

In accordance with U.S. Court of International Trade ("USCIT") Rule 56.2 Plaintiff

Kumho P&B Chemicals Inc. ("KPB" or "Plaintiff") replies to the brief filed by Defendant, the

United States.  Defendant's Response Brief, *Kumho P&B Chemicals Inc. v. United States*, No.

25-00143 (Ct. Int'l Trade June 15, 2026), ECF No. 45 ("Def. Br.").  For the following reasons,

the Defendant's arguments are without merit and should be rejected.

## I.    <u>ARGUMENT</u>

A.    *Commerce's Determination That the Electricity for LTAR Program Is De Facto Specific Is Unsupported by Substantial Evidence and Is Otherwise Unlawful*

In the *Final Determination*, the U.S. Department of Commerce ("Commerce") found that the Government of Korea's ("GOK") provision of electricity for less than adequate remuneration ("LTAR") was *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III), which provides that a domestic subsidy is *de facto* specific if "{a}n enterprise or industry receives a disproportionately large amount of the subsidy." *Certain Epoxy Resins From the Republic of Korea: Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination*, 90 Fed. Reg. 14,605 (Dep't Commerce Apr. 3, 2025) ("*Final Determination*"), PR 531,[1] and accompanying Decision Mem. at 22-28 ("Final Decision Mem."), PR 540.  As support, Commerce relied upon electricity consumption data for the chemical industry and determined that the chemical industry received a disproportionately large amount of the subsidy because it consumed a significant portion of the total industrial class electricity. Final Decision Mem. at 28.

KPB argued in its Rule 56.2 brief that Commerce's determination is unsupported by substantial evidence and is otherwise not in accordance with law.  *See* Plaintiff Kumho P&B Chems. Inc.'s Mot. for J. on the Agency R. and Br. in Support at 8, *Kumho P&B Chems. Inc. v. United States*, No. 25-cv-00143-GSK (Ct. Int'l Trade Dec. 2, 2025), ECF No. 28 ("KPB Br.").  Specifically, KPB argued that, in the *Final Determination*, Commerce failed to give meaning to the statutory term "disproportionate" because it did not explain how the chemical industry's consumption of industrial electricity was out of proportion to what would otherwise be expected,

---

[1] The administrative record is contained in a confidential record ("CR") and a public record ("PR").  Administrative Record Index, *Kumho P&B Chemicals Inc. v. United States*, No. 25-00143 (Ct. Int'l Trade Sept. 3, 2025), ECF No. 23.

*i.e.,* disproportionate.  Instead, Commerce's comparison just makes the obvious point that the largest consumers consume more industrial electricity than the smaller consumers.  This shows disparity but not disproportionality as that term is defined.  *See* KPB Br. at 6-7.  KPB also argued that electricity is the type of broadly available and widely-used commodity that should not be considered to be "specific" under the CVD law.  *Id.* at 15-16.

Although only a small subset of KPB's argument, Defendant devotes several pages responding to the argument about treating a broadly-available and widely-used program like electricity for LTAR as countervailable.  Def. Br. at 14-16.  To be clear, KPB does not argue that the electricity for LTAR program is not specific in this case solely because the industrial electricity at issue is broadly available and widely used.  Instead, KPB argued that the broad availability of electricity meant that the specificity finding is suspect, and Commerce, in this case, has not shown that the chemical industry's consumption of the broadly available and widely used commodity is more than would be expected, *i.e.*, that it is disproportionately large pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III).  KPB Br. at 16.  This argument is supported by the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, which distinguishes between subsidies provided to "discrete segments of the economy" versus those that spread a benefit throughout an economy via widespread availability and use.  Uruguay Round Agreements Act Statement of Administrative Action, H.R. Rep. No. 103-316, Vol.1, at 930 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4242 ("SAA"); 19 U.S.C. § 3512(d); *see also POSCO v. United States*, 794 F. Supp. 3d 1402, 1409 (Ct. Int'l Trade 2025) ("The requirement that subsidies be 'specific' before they can be countered by countervailing duties exists to 'winnow out . . . those foreign subsidies which truly are broadly available and widely used

throughout an economy . . . such as certain public infrastructure-related programs.'") (quoting *Gov't of Quebec v. United States,* 105 F.4th 1359, 1375 (Fed. Cir. 2024) and SAA at 929).

Further detracting from treating a broadly-available and widely used commodity like electricity as a specific subsidy is the fact that the electricity rates for industrial users are set based on a standard pricing mechanism and thus no enterprise or industry receives a more preferential rate than other companies or industrial users.  *See* Letter from Lee & Ko LLC to Sec'y of Commerce, "Certain Epoxy Resins from Korea: GOK's Initial Questionnaire Response" at Ex. E-10 (July 3, 2024) ("GOK IQR"), CR 92-145, PR 117-158 (showing that electricity prices were based on standard pricing); *see POSCO*, 794 F. Supp. 3d at 1410-11 ("Commerce's 'untenable' logic would lead to almost every generally available subsidy being *de facto* specific to every 'large company… merely because of the size of the company.'") (citing *AK Steel Corp. v. United States*, 192 F.3d 1367, 1385 (Fed. Cir. 1999)).  This is important because it demonstrates that industrial users like KPB are not being singled out for the type of preferential treatment that could indicate that a broadly available input like electricity was providing a specific subsidy.

Defendant argues that Commerce's determination is supported by substantial evidence because the record demonstrates that the chemical industry consumed a larger percentage of electricity during the period of investigation than many other manufacturing industries and that the chemical industry is just one subcategory of manufacturing within the broader industry grouping in the Korean economy.  Def. Br. at 17-18.  The court has rejected the premise that an enterprise or industry receives a disproportionately large amount of a subsidy pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III) simply because it consumes more than others.  In *Hyundai Steel I*, the court held that "when analyzing whether an industry or group of industries receives a

disproportionate amount of the benefit conferred by the subsidy pursuant to 19 U.S.C.

§ 1677(5A)(D)(iii), receipt of a greater monetary benefit from the program than others is not

determinative of disproportionality." *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345,

1351 (Ct. Int'l Trade 2024) ("*Hyundai Steel I*") (citing *AK Steel Corp. v. United States*, 192 F.3d

at 1385)*. In response to the court's remand in *Hyundai Steel I*, Commerce offered several

analyses that are almost identical to the ones discussed by Defendant in its brief to support

Commerce's disproportionality analysis. *See Hyundai Steel Co. v. United States*, 798 F. Supp.

3d 1283, 1288-89 (Ct. Int'l Trade 2025) ("*Hyundai Steel II*"). The court rejected these analyses,

which it aptly characterized as "more equates with disproportionate" type analyses. *See id.* In

doing so, the court reaffirmed the fundamental point from *Hyundai Steel I* that disproportionality

"requires a comparison of the amount of subsidy and an attribute of the industry, not a

comparison of the amount of a subsidy given to different industries." 745 F. Supp. 3d at 1351-52

(citing *AK Steel Corp.*, 192 F. 3d at 1385; *Royal Thai Government v. United States*, 436 F.3d

1330, 1336 (Fed. Cir. 2006)). In *POSCO*, the court similarly held that Commerce "was required

by the plain meaning of the statute to use a baseline that shows the Korean steel industry's

subsidy is out of line with the industry's own usage, not just the 'benefits {received by} others.'"

*POSCO*, 794 F. Supp. 3d at 1410 (citing *Hyundai Steel I*, 745 F. Supp. 3d at 1351).

Defendant does not explain why these previous decisions from this court on the exact

same issue do not apply here. Instead, Defendant merely points out that these decisions are not

final and that each review stands on its own record. *See* Def. Br. at 21-22. While it is true that

this Court is not bound to follow these decisions, the fact that Defendant offers no substantive

basis for distinguishing these cases only strengthens their persuasive value. Additionally, the

unbending nature of these decisions and consistency of their reasoning makes them highly

relevant to this Court's decision on the identical issue.

Defendant also seeks to defend Commerce's disproportionality decision by arguing that

"subsidized electricity may generally benefit all industries by lowering their electrical costs, but

any industry that consumes a disproportionate amount of electricity compared to other industries

will nevertheless disproportionately benefit from that subsidy." Def. Br. at 21 (citing Final

Decision Mem. at 26). This explanation conflates the specificity issue with the separate benefit

issue. The statute treats the specificity and benefit issues as distinct. *Compare* 19 U.S.C.

§ 1677(5A) (specificity) *with* 19 U.S.C. § 1677(5)(E) (benefit). Thus, Commerce's reliance on

the fact that industries that consume more electricity received more benefit does not equate with

disproportionality for specificity purposes. *See Hyundai Steel II*, 798 F. Supp. 3d at 1288-91.

Defendant's reliance on the fact the Korean economy is diverse is also unpersuasive

because Defendant fails to link the fact that the economy of Korea is diverse with Commerce's

finding that the chemical industry received a disproportionately large amount of the subsidy.

The fact that there are 19 industry groupings may show that, overall, the Korean economy is

diverse, but most of the industry groups such as wholesale and retail trade, accommodation and

food service, education, and membership organizations do not consume industrial electricity.

*See* Mem. from Thomas Martin, U.S. Dep't Commerce, to The File, "Placement of Korea

Economic Diversification Memorandum on the Record" at Attachment (July 15, 2024), PR Doc.

227. They are thus not relevant to the question of whether the chemical industry consumed a

disproportionate amount of industrial electricity, which was Commerce's chosen method for

analyzing disproportionality in the *Final Determination*. Furthermore, while Commerce must

consider the extent of economic diversification, this criterion should "serve to inform the

6

application of, rather than supersede or substitute for, the enumerated specificity factors." SAA at 931.

Defendant also attempts to distinguish *Bethlehem Steel*, which KPB cited in support of its disproportionality argument. Def. Br. at 19-21 (citing *Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001)). The distinguishing factor, according to Defendant, is the fact that the benefit is "a direct result of the respondent's consumption" of electricity because the subsidy is conferred through the price of electricity. Def. Br. at 20. This is a distinction without a difference. In *Bethlehem Steel*, the program involved electricity discounts for companies that agreed to lower their electricity usage during certain designated times of high electricity demand. *Bethlehem Steel,* 140 F. Supp. 2d at 1367. In the instant case, the program involves the provision of electricity for LTAR. But this difference in the nature of the program does not render *Bethlehem Steel* inapposite. *Bethlehem Steel* stands for the proposition that disparity in the amount of benefits received based on usage levels alone is not a sufficient basis to find that a subsidy is *de facto* specific based on disproportionate receipt of the subsidy. That aspect of the holding is not contingent upon the nature of the program; it applies for any program where benefits are based on usage levels. Here, the amount of the benefit from the electricity for LTAR program is tied to usage, just as the benefit from the electricity discount program at issue in *Bethlehem Steel* was tied to usage. Commerce calculated a percentage adjustment to increase the per-unit price of electricity to determine the benefit. Mem. from Thomas Martin, Int'l Trade Compliance Analyst, U.S. Dep't Commerce, to The File, "Final Determination Analysis Mem. for Kumho P&B Chems. Inc. and Kumho Petrochemical Co., Ltd." at Attachment II (Mar. 28, 2025), CR 699-700, PR 235. So, the more units of electricity a party consumes, the higher the benefit. The benefit is therefore tied to usage, just as in *Bethlehem Steel*, where a larger

7

company with high usage would receive a larger benefit as the program links the benefit to reduction in usage levels.

Defendant also seeks to distinguish the court's prior decisions regarding the disproportionality of the electricity for LTAR program in Korea by citing to *Mosaic Co. v. United States*. Def. Br. at 22-24. In *Mosaic*, the Federal Circuit addressed whether the provision of natural gas for LTAR was specific pursuant to section 771(5A)(D)(iii)(II) of the Tariff Act of 1930, which is limited to whether a program is specific to a predominant user of a subsidy. *See Mosaic Co. v. United States*, 160 F.4th 1340, 1346 (Fed. Cir. 2025). Commerce had determined that the agrochemical industry was a predominant user of natural gas based on a comparison of the agrochemical industry to other industrial users. *Id.* at 1344-45. Appellant argued that Commerce's use of "other industrial users" as the comparator for its predominant user analysis was unlawful and that Commerce was required to use all natural gas consumers in Russia as the comparator. *Id.* at 1346. Presented with the narrow issue of whether Commerce had "sufficient flexibility" under section 771(5A)(D)(iii)(II) to select other industrial users as the comparator, the Federal Circuit held that it did. *Id.* at 1348. *Mosaic* is inapposite.

First, *Mosaic* involved a "predominant use" *de facto* specificity analysis under section 771(5A)(D)(iii)(II) and not disproportionality under subpart (III). The court was thus interpreting different statutory language.

Second, *Mosaic* is factually distinguishable. In *Mosaic*, the appellant argued that the predominant user language in section 771(5A)(D)(iii)(II) required "Commerce to conduct a comparison of the industry at issue against all users of the subsidy" and thus "Commerce's comparison of the agrochemical industry against industrial users rather than all natural gas consumers in Russia, was thus contrary to law." *Mosaic*, 160 F. 4th at 1346. In other words, the

8

appellant made the narrow argument that Commerce was statutorily required to use a particular

comparator for its predominant user analysis. The Federal Circuit thus focused its analysis on

whether Commerce had "reasonable flexibility" in the methodology it used to identify

predominant use pursuant to section 771(5A)(D)(iii)(II). *Id.*

Here, by contrast, KPB has not argued that Commerce is required to use any particular

comparator or comparison methodology for its disproportionality analysis. Instead, KPB argues

that Commerce's comparison of the amount of electricity consumed by the chemical industry to

other industries fails to give meaning to the term "disproportionate" and is exactly the type of

analysis that has been found to be unsupported by substantial evidence in recent cases. KPB Br.

at 7, 16, 19. Furthermore, while Commerce conducted its disproportionality analysis using

consumption of industrial electricity KPB does not challenge, as was the case in *Mosaic*,

Commerce's reliance on industrial users or otherwise argue that Commerce was required to base

its comparison on all users of electricity in Korea. *See Mosaic*, 160 F. 4th at 1346 ("Appellant

argues that Commerce's comparison of the agrochemical industry against *industrial* users, rather

than all natural gas consumers within Russia, was contrary to law.") (emphasis added).

Third and finally, in *Mosaic* there was "no dispute" as to whether the agrochemical

industry was a predominant user of the natural gas subsidy if Commerce had "reasonable

flexibility" in determining the comparator for its predominant use analysis. *Mosaic*, 160 F.4th at

1346. By contrast, KPB is not disputing that Commerce has discretion in choosing the

comparator; its argument is that the comparison needs to show disproportionality as defined and

not just disparity. *See* KPB Br. at 18-19. This further renders *Mosaic* inapposite.

9

## II.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiff KPB respectfully requests that this Court hold that

Commerce's *Final Determination* is unsupported by substantial record evidence and otherwise

not in accordance with law, and remand the *Final Determination* to Commerce for a

redetermination consistent with the judgment and findings of this Court.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff Kumho P&B Chemicals Inc.*

Dated: July 27, 2026

Certificate Of Compliance

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,637 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills

Dated:  July 27, 2026

11

300251861