**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |  |
|---|---|---|
| KUMHO P & B CHEMICALS INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KUKDO CHEMICAL CO., LTD. and | ) | |
| U.S. EPOXY RESIN PRODUCERS *AD HOC* | ) | |
| COALITION | ) | PUBLIC DOCUMENT |
| | ) | |
| *Consolidated Plaintiffs,* | ) | |
| | ) | **Consolidated Court No.** |
| v. | ) | **25-cv-00143-GSK** |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant,* | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| U.S. EPOXY RESIN PRODUCERS *AD HOC* | ) | |
| COALITION and, | ) | |
| KUKDO CHEMICAL CO., LTD. | ) | |
| | ) | |
| *Defendant-Intervenors.* | ) | |
| | ) | |

**CONSOLIDATED PLAINTIFF KUKDO CHEMICAL CO., LTD.'S REPLY BRIEF IN**
**SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY**
**RECORD**

**ARNOLD & PORTER KAYE SCHOLER LLP**       J. David Park
**601 MASSACHUSETTS AVENUE, N.W.**        Henry D. Almond
**WASHINGTON, D.C. 20001**            Kang Woo Lee
**PHONE:  (202) 942-5646**            Jennifer Farrin
**FAX:  (202) 942-5999**

*Counsel to Kukdo Chemical Co., Ltd.*
*Consolidated Plaintiff and*
*Defendant-Intervenor*

Dated:  July 27, 2026

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 1

II.  ARGUMENT ......................................................................................................... 2

    A.  Commerce's Justification For Finding The CSRSP Program Countervailable Is Inadequate ............................................................................................ 3

    B.  Commerce's Relied On § 351.529 To Establish The Statutorily Mandated Showing Of A Financial Contribution ......................................................... 6

    C.  Commerce's Benefit Calculation for the CSRSP Program Cannot Be Sustained .... 9

        1.  *Commerce Impermissibly Attributed the Same Benefit to Both Mandatory Respondents* ................................................................................... 11

        2.  *Commerce Double Counted the Benefit to Kukdo Chemical and its Cross-Owned Affiliate, Kukdo Finechem* ......................................................... 13

    D.  Purchases of Chinese-origin ECH Does Not Constitute a Countervailable Subsidy and is Not Specific Within the Meaning of the Statute ............................... 15

    E.  Commerce Unreasonably Resorted To Partial Afa For The First-Ever Analysis Of The Transnational Subsidy Provision Of Goods For LTAR ..................... 20

III. CONCLUSION .................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Gujarat Fluorochemicals Limited v. United States*,
    617 F.Supp.3d 1328 (Ct. Int'l Trade 2023) ..............................................................4

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951)...................................................................................................17

### STATUTES

19 U.S.C. § 1677(5) ...............................................................................................................4, 5

19 U.S.C. § 1677(5A) ............................................................................................................4, 5

19 U.S.C. § 1677(5A)(D)...............................................................................................18, 19, 20

19 U.S.C. § 1677(5A)(D)(iii)...................................................................................................19

19 U.S.C. § 1677(5A)(D)(iii)(II) .......................................................................................16, 19

19 U.S.C. § 1677(5)(B)(iii)................................................................................................4, 5, 6

19 U.S.C. § 1677(5)(D)......................................................................................................5, 6

19 U.S.C. § 1677(5)(D)(i).......................................................................................................4

19 U.S.C. § 1677(5)(D)(ii)...................................................................................................7, 8

19 U.S.C. § 1677(5)(D)(iii)...................................................................................................16

19 U.S.C. § 1677(5)(E)(iv) ...................................................................................................16

### REGULATIONS

19 C.F.R § 351.308(a)...........................................................................................................17

19 C.F.R § 351.503(a)............................................................................................................8

19 C.F.R § 351.525(b)(6)(ii)...................................................................................................14

19 C.F.R § 351.529(a).....................................................................................................6, 7, 8

19 C.F.R § 351.529(b) ....................................................................................................6, 7, 8

**ADMINISTRATIVE DETERMINATIONS**

*Countervailing Duties; Final Rule*, 63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998) ....................................................................................................................14

*Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of the Antidumping and Countervailing Duty Laws, Final Rule*, 89 Fed. Reg. 20,766 (Dep't Commerce Mar. 25, 2024).............8, 15, 16, 17

## I.    **INTRODUCTION**

Consolidated Plaintiff and Defendant-Intervenor Kukdo Chemical Co., Ltd.

("Kukdo Chemical") respectfully submits this reply brief in response to arguments made by

Defendant United States ("Defendant") and the U.S. Epoxy Resin Producers *Ad Hoc* Coalition

("Petitioner") in their respective response briefs in opposition to Kukdo Chemical's Rule 56.2

Motion for Judgment Upon the Agency Record and accompanying memorandum in support.  *See*

Defendant's Response in Opposition to Plaintiffs' Rule 56.2 Motions for Judgment on the

Agency Record, June 15, 2026, ECF No. 45 ("Def. Response Br."); Defendant-Intervenor U.S.

Epoxy Resin Producers *Ad Hoc* Coalition's Response Brief in Opposition to Rule 56.2 Motions

for Judgment upon the Agency Record of Kumho P & B Chemicals Inc. and Kukdo Chemical

Co., Ltd., June 29, 2026, ECF No. 55 ("Pet. Response Br.").  Kukdo Chemical challenges certain

aspects of the U.S. Department of Commerce's ("Commerce") final determination and resulting

countervailing duty order in the countervailing duty investigation of Certain Epoxy Resins from

the Republic of Korea.  *See Certain Epoxy Resins From the Republic of Korea: Final Affirmative

Countervailing Duty Determination and Final Negative Critical Circumstances Determination*,

90 Fed. Reg. 14,605 (Dept. Comm., Apr. 3, 2025) ("*Final Determination*") P.R. 540, and

accompanying Issues and Decision Memorandum ("Final I&D Memo") P.R. 531; *Certain Epoxy

Resins From Taiwan: Amended Final Countervailing Duty Determination*; *Certain Epoxy Resins

From the Republic of Korea and Taiwan: Countervailing Duty Orders*, 90 Fed. Reg. 22, 235

(Dept. Comm., May 27, 2025) ("*Countervailing Duty Order*").  Kukdo Chemical demonstrates

below that Defendant and Petitioner fail to justify the challenged aspects of Commerce's final

determination.

## II.   **ARGUMENT**

In Kukdo Chemical's affirmative Rule 56.2 brief, Kukdo Chemical raised five primary arguments as to why Commerce's final determination was unsupported by substantial record evidence or otherwise not in accordance with law.  *See* Memorandum in Support of Kukdo Chemical's Motion for Judgment Upon the Agency Record, Dec. 2, 2025, ECF No. 31 ("Kukdo Br.").

First, Kukdo Chemical demonstrated that Commerce's determination that the Chemical Substance Registration Support Program ("CSRSP") constitutes a countervailable subsidy is unsupported by substantial record evidence and contrary to law.  *Id*. at 14-21.

Second, also with respect to the CSRSP program, even if this program is properly considered a countervailable subsidy, Kukdo Chemical highlighted the absurdity of Commerce's benefit calculation.  *Id*. at 21-27.  In particular, Commerce overstated any benefit allegedly conferred upon a group of participants by the CSRSP program.  Rather than evenly allocate the alleged benefit among the participants, Commerce inexplicably attributed the entire government outlay to each participant company.  *Id*. at 23-25.  The error is particularly stark where the group consisted of two mandatory respondents, Kukdo Chemical and Kumho.  *Id*.  Commerce's benefit calculation even more untethered from logic and fact where Commerce attributed the benefit amount twice within Kukdo Chemical's subsidy calculations, once for Kukdo Chemical and then *again* for its cross-owned company, Kukdo Finechem.  *Id*. at 26.  Commerce's benefit calculation for the CSRSP program is thus unsupported by substantial record evidence.

Third, Kukdo Chemical demonstrated that Commerce's determination regarding the transnational subsidy provision of the ECH for LTAR is unsupported by substantial record evidence and contrary to law.  *Id*. at 27-34.  While Commerce removed its prior regulatory prohibition on the investigation of transnational subsidies, the countervailing duty statute

remains the same, and Commerce did not support its determination with substantial record evidence.

Fourth, even assuming *arguendo* that Commerce's transnational subsidy provision of the ECH for LTAR satisfies the statutory requirements for it to be a countervailable subsidy, Commerce's result-driven benefit calculation, based on adverse facts available, amounts to abuse of discretion. *Id*. at 34-40.  While acknowledging that it is the first time Commerce has countervailed a transnational subsidy outside of the context of an international consortium or upstream subsidy, Commerce faults Kukdo Chemical for not providing the information Commerce later determined necessary for its novel benefit calculation.  This aspect of Commerce's determination is unsupported by substantial record evidence and not in accordance with law.

Fifth, Commerce's determination that the provision of electricity for LTAR was *de facto* specific is unsupported by substantial evidence and is otherwise not in accordance with law.  *Id*. at 40-42.  In this regard, Kukdo Chemical incorporates by reference Kumho's reply brief and arguments relating to Commerce's specificity determination with respect to the provision of electricity for LTAR.  *See* Kumho Reply Brief, July 27, 2026, ECF No. 58.

### A.    Commerce's Justification For Finding The CSRSP Program Countervailable Is Inadequate

With respect to the countervailability of the CSRSP program, Defendant and Petitioner argue that because the costs of consulting and toxicity testing services are borne by an entity other than Kukdo Chemical itself, Kukdo Chemical had the benefit of having costs it otherwise would have shouldered paid for by the government, and thus, there was a financial contribution. *See* Def. Response Br. at 27; Pet. Response Br. at 5-6.  Their arguments conflate the separate financial contribution and benefit analyses.  More fundamentally, Defendant and Petitioner

attempt to defend Commerce's financial contribution finding by focusing on how Kukdo

Chemical allegedly benefited from participating in the CSRSP program, rather than addressing

how Kukdo Chemical's participation in the program could constitute a financial contribution.

*See* Def. Response Br. at 27 ("the participant companies are relieved of the financial burden of

paying such costs themselves"); Pet. Response Br. at 3 (the government "ultimately pays

registration-related costs that participating companies otherwise would have borne

individually.").

However, the statute requires a separate finding of a government financial contribution

and the conferral of benefit on the recipient for a subsidy to be countervailable.  *See* 19 U.S.C.

§ 1677 (5) & (5A); *see also Gujarat Fluorochemicals Limited v. United States*, 617 F.Supp.3d

1328, 1332 (Ct. Int'l Trade 2023) ("A 'countervailable subsidy' exists, generally, where an

authority provides a financial contribution to a 'person' and a 'benefit is thereby conferred' and

where the subsidy meets the requirements of 'specificity,' as determined according to various

rules set forth in the statute.").  The language of the statute is clear.  In order to conclude that a

"person" received a subsidy, Commerce must determine that a government provided that person

with both a "financial contribution" and a "benefit."

In its *Final Determination*, Commerce "acknowledge{d} that the CSRSP program does

not involve a financial contribution under {19 U.S.C. § 1677(5)(D)(i)} in the form of a direct

transfer of funds."  Final I&D Memo at 57, P.R. 531.  However, Commerce "continue{s} to find

that this program entails financial contribution," because under 19 U.S.C. § 1677(5)(B)(iii), "a

financial contribution *occurs* where an authority 'makes a payment to a funding mechanism to

provide a financial contribution.'"  *Id*., P.R. 531 (emphasis added).  Commerce's conclusion that

a financial contribution exists because an authority "makes a payment to a funding mechanism" cannot be supported by substantial evidence and is otherwise contrary to law.

As Kukdo Chemical demonstrated in its brief, other than referring to another statutory definition under which the program may constitute a subsidy, Commerce did not elaborate on how Kukdo Chemical's participation in the CSRSP program results in the GOK providing a "financial contribution" to Kukdo Chemical a necessary element to find the potential subsidy countervailable. *See* Kukdo Br. at 16; *see also* 19 U.S.C. § 1677 (5) & (5A). 19 U.S.C. § 1677(5)(B)(iii) does not define what constitutes a financial contribution; rather, it describes a situation under which a subsidy may exist, including making a payment to a funding mechanism. However, the statute still requires a finding of financial contribution; it reads, "A subsidy is described in this paragraph in the case in which an authority . . . (iii) makes a payment to a funding mechanism to provide a *financial contribution*." *Id*. (emphasis added). The statute is also clear as to how Commerce is to determine whether a person received a "financial contribution," because it defines the term:

(D) Financial contribution

The term "financial contribution" means –

(i) the direct transfer of funds, such as grants, loans, and equity infusion, or the potential direct transfer of funds or liabilities, such as loan guarantees,

(ii) foregoing or not collecting revenues that is otherwise due, such as granting tax credits or deductions from taxable income,

(iii) providing goods or services, other than general infrastructure, or

(iv) purchasing goods.

19 U.S.C. § 1677(5)(D).

Commerce did not find that a financial contribution occurred pursuant to the statute. Rather, Commerce concluded that because the program participant companies, including Kukdo Chemical, "can receive funding from the GOK to alleviate the financial burden" for services related to the registration of chemical substances, the CSRSP program provides a financial contribution within the meaning of 19 U.S.C. § 1677(5)(B)(iii). *See* Final I&D Memo at 57, P.R. 531. Moreover, for a subsidy to be countervailable, Commerce was required to find a financial contribution as defined under 19 U.S.C. § 1677(5)(D) to a person to whom "a benefit is thereby conferred." 19 U.S.C. § 1677(5)(B)(iii). Without articulating what constitutes a financial contribution, Commerce relied on the newly promulgated regulation, 19 C.F.R. § 351.529(b), to conclude that Kukdo Chemical received a countervailable benefit in the form of "exempt" fees that were otherwise due. *See* Final I&D Memo at 60, P.R. 531. But in order to invoke this regulation, Commerce must first find a financial contribution within the meaning of 19 U.S.C. 1677(5)(B)(iii). Commerce's reliance on 19 C.F.R. § 351.529(b) is thus misguided; it did not properly find that these fees constitute a financial contribution, and thus they are not countervailable subsidies under applicable law.

**B.    Commerce's Relied On § 351.529 To Establish The Statutorily Mandated Showing Of A Financial Contribution**

Without articulating what constitutes a financial contribution under the CSRSP program, Commerce relied on a specific method for measuring benefit, outlined in 19 C.F.R. § 351.529(b), that is reserved for measuring countervailable benefit for "foregoing or not collecting revenue that is otherwise due." 19 C.F.R. § 351.529(a). Defendant argues that revenue foregone "is not the basis of the financial contribution articulated by Commerce in the Final Determination." Def. Response Br. at 28. Rather, Defendant states that Commerce's attempt to calculate benefit

6

under 19 C.F.R. § 351.529(b) "is a reasonable approach to calculating the type of benefit conferred to recipients under the CSRSP program." *Id*.

However, as Defendant also acknowledges, the benefit calculation under 19 C.F.R. § 351.529(b) is for measuring countervailable benefit for "foregoing or not collecting revenue that is otherwise due," *as defined* under 19 C.F.R. § 351.529(a), not for other forms of undefined foregone revenue, as is the case here. *See* Def. Response Br. at 28; *see also* 19 C.F.R. § 351.529(b) ("If the Secretary determines that the government has exempted or remitted in part or in full, a fee, fine, or penalty *under paragraph (a) of the section*, a benefit exists to the extent that the fee, fine, or penalty paid by a party is less than if the government had not exempted or remitted that fee, fine, or penalty.") (emphasis added). In reality, the CSRSP program does not result in any forgone revenue. Rather, the program provides support for costs associated with the legally-required registration of certain "phase in" chemicals to "minimize the burden of registering imported and/or manufactured chemical substances for SMEs." *See* Kukdo Br. at 18-19 (citing *Certain Epoxy Resins From the Republic of Korea: Preliminary Negative Countervailing Duty Determination, Preliminary Negative Critical Circumstances Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 89 Fed. Reg. 74,912 (Dep't Comm., Sept. 13, 2024), P.R. 358 and accompanying Issues and Decision Memorandum ("Prelim. I&D Memo"), P.R. 351). The CSRSP program does not, by definition or in practice, exempt certain producers from paying a fee that the GOK would have otherwise collected.

Commerce's attempt to calculate benefit for a specific type of financial contribution, *i.e.,* "forgoing or not collecting revenue that is otherwise due" under 19 U.S.C. § 1677(5)(D)(ii), that does not exist in the CSRSP program further demonstrates Commerce's result-driven

determination.  As Commerce's regulation provides, "{i}n the case of a government program for which a specific rule for the measure of a benefit is contained in this subpart E, the Secretary will measure the extent to which a financial contribution (or income or price support) confers a benefit as provided in that rule."  19 C.F.R.  §351.503(a).  If the Defendant concedes, as it does in its brief, that revenue foregone "is not the basis of the financial contribution articulated by Commerce in the Final Determination," Def. Response Br. at 28, Commerce's benefit analysis under 19 C.F.R. § 351.529(b) necessarily fails because there is no other articulated basis to support a financial contribution finding.

Even assuming *arguendo* that Commerce's reliance on 19 C.F.R. § 351.529(a) was appropriate to examine the CSRSP program, Commerce is still required to find that a financial contribution exists.  As Commerce explained in its *Final Rule*, "when a government fails to enforce its regulations, requirements, or obligations by not collecting a fee, a fine, or a penalty, such inaction can be considered a countervailable subsidy.  In that case, the government has forgone revenue it was otherwise due, therefore, benefiting the party not paying the fee, fine, or penalty, pursuant to {19 U.S.C. § 1677(5)(D)(ii)}."  *Final Rule* at 20,827.

In determining that Kukdo Chemical received a countervailable benefit in the form of exempt fees, Commerce undertook no analysis to determine whether such fees were "otherwise due" that have been forgone or not collected by the GOK within the meaning of 19 U.S.C. § 1677(5)(D)(ii).  Here, the record confirms that there are no fees "otherwise due" to the GOK for Kukdo Chemical's participation in the CSRSP program.  In short, Commerce's conclusion is unsupported and the articulated basis behind supporting its finding is contrary to law as it is inconsistent with the analytical framework under the statute and Commerce's regulations at 19 C.F.R. § 351.529(a).

8

C.      **Commerce's Benefit Calculation for the CSRSP Program Cannot Be Sustained**

In the *Final Determination*, Commerce improperly attributed the same benefit amount to both mandatory respondents and double counted the benefit received by Kukdo Chemical and its cross-owned company, Kukdo Finechem.  *See* Final I&D Memo at 60-61, P.R. 531.  Defendant and Petitioner do not meaningfully address Kukdo Chemical's arguments as to the absurdity of Commerce's benefit calculation.  *See* Kukdo Br. at 21-27.  Defendant argues that but for the program, each participating company "would have each individually incurred the legally mandated costs of chemical registration."  Def. Response Br. at 29.  This statement alone warrants remand because the record confirms that the companies *in fact were able to pool together and incur the registration testing costs only once* and would not have needed to actually incur the costs separately or individually.  The Government relies on this unsupported factual statement, and without it the Government's position falls apart.

For its part, Petitioner similarly argues that the CSRSP program "ultimately pays registration-related costs that participating companies otherwise would have borne individually" Pet. Response Br. at 3.  These arguments ignore how the CSRSP program operates.

As Commerce "confirmed at verification," "companies *must form consultative bodies (CBs) that apply for this program to receive the benefit*."  Final I&D Memo at 57, P.R. 531.  At the most basic level, individual companies cannot receive any "benefit" from the CSRSP program, because any "financial support for required registering or testing their chemicals" would not even be available to individual companies, unless they form consultative bodies that consist of more than two participants.  *Id*., P.R. 531.  As the Government of Korea ("GOK") explained, under Article 15 of the Act on the Registration and Evaluation of Chemical Substances, "registration application data *must be jointly submitted* by forming a consultative

9

body for each substance to be registered." GOK Initial Questionnaire Response ("GOK IQR") (July 3, 1014) at 516, C.R. 92-145, P.R. 117-158 (emphasis added). GOK further stated that the program "does not provide assistance to individual companies but provides assistance to the consultative body for joint submission of a chemical substance." *Id.* Put differently, Defendant's and Petitioner's "but for" hypotheticals - that costs would have been borne individually had they not participated in the program – are simply not plausible under the structure of the CSRSP program.[1] Without a consultative body (which does not exist outside of the context of the CSRSP program, and is formed solely for participation in the CSRSP program), no benefit is conferred.

In addition, Defendant's and Petitioner's arguments do not fit within Commerce's benefit calculation framework. As noted above, in the *Final Determination*, Commerce calculated the alleged benefit under this program in accordance with 19 C.F.R. § 351.529(b) and found that a benefit existed "to the extent that the fee, fine, or penalty paid by a party is less than if the government had not exempted or remitted that fee, fine, or penalty." Final I&D Memo at 60, P.R. 531. In other words, Commerce concluded that Kukdo Chemical received a countervailable benefit in the form of "exempt" fees that were otherwise due. *Id.*, P.R. 531. Thus, Petitioner claims that the relevant inquiry is "not what the government spent, but the benefit Kukdo received as a participant in the consultative body." Pet. Response Br. at 7. Petitioner's argument

---

[1] Regardless of the existence and structure of the CSRSP program, the record makes clear that a chemical need only be registered once. In the case of Kukdo Chemical and Kukdo Finechem, this "but for" logic assumes, without support, that the parent company (Kukdo Chemical) and its wholly-owned subsidiary (Kukdo Finechem) would have separately and individually incurred the costs of registering the chemicals at issue. This assumption that is central to their theory is unsupported by any record evidence. Simply put, there is nothing in the record to suggest that the two companies would behave this way rather than simply applying and incurring the costs as one.

10

completely misses the mark.  Commerce's benefit calculation was in fact based on "a government exempting or remitting a 'fee, fine, or penalty.'"  Def. Response Br. at 28 (citing Final I&D Memo at 60, P.R. 531).  That is, a benefit existed to the extent a "fee, fine, or penalty" that is otherwise due but was foregone or not collected due to the existence of the program.  Thus, the relevant inquiry is whether the lack of registration and testing fees for participants in the CSRSP program constitute "exempt fees" otherwise due to the GOK.  As explained below, the record clearly shows that these fees were not otherwise due to the GOK, and thus do not constitute a countervailable benefit.  Setting aside the countervailability of the program, where the benefit amount was conferred upon a group consisting of individual members, attributing the entire amount of benefit to each individual member, regardless of the number of participants, overstates any benefit allegedly received by any particular participant.  This aspect of Commerce's determination, regardless of how Commerce characterizes "financial contribution" is unsupported by substantial record evidence.

### 1. *Commerce Impermissibly Attributed the Same Benefit to Both Mandatory Respondents*

Defendant and Petitioner conflate the requirement to register a chemical substance under Korean law with the requirements to receive the alleged benefits under the CSRSP program.  *See* Def. Response Br. at 30 ("the facts on the record reflect that each individual company would have been subject to the requirement and fee"); Pet. Response Br. at 9 (Commerce "counted two separate company-specific registration obligations that Korean law required each company to satisfy.").  Their arguments miss the mark.  While each individual company intending to manufacture or import certain phase-in chemicals is required to *register* (not pay a *fee*) such chemicals individually, each company must also jointly submit chemical data necessary for each registration by designating a representative.  *See* GOK IQR at Exhibit CS-1 containing the Act

11

on Registration and Evaluation of Chemical Substances at Art. 15, C.R. 92-145, P.R. 117-158

("in the case of data to apply for registration prescribed by Ordinance of the Ministry of

Environment, *they shall jointly submit such data by designating a representative*") (emphasis

added).  For consulting services and toxicity reports required for such data, the Ministry of

Environment ("MOE") implemented the "Chemical Substance Registration Support Project"

("CSRSP") to support companies' registration of chemical substances and minimize the burden

associated with the registration.  *See* Kukdo Chemical's Initial Countervailing Duty

Questionnaire Response ("Kukdo Chemical IQR") (July 3, 2024) at Exhibit OTH-13-A, at 1,

C.R. 285-287; P.R. 202-203; *see also* GOK IQR at Exhibit CS-2, C.R. 92-145, P.R. 117-158

("Under Article 10 of the Act on Registration and Evaluation of Chemical Substances, anyone

wishing to manufacture or import existing chemical substances in quantities of 1 ton or more per

year must register in stages by 2030 . . . Accordingly, the Ministry of Environment is

implementing "2023 Chemical Registration Support" as follows to minimize the burden on

industries such as small and medium-sized businesses.").

Put simply, pursuant to the underlying Act, the CSRSP program requires participant

companies to submit chemical data jointly; as such, Kukdo Chemical was required to form a

consultative body and designate a representative to participate in the program.  Commerce

confirmed this fact at verification.  *See* Final I&D Memo at 57, P.R. 531 ("companies must form

consultative bodies (CBs) that apply for this program to receive the benefit, financial support for

required registering or testing their chemicals, on behalf of their participant companies.").  Thus,

the "financial burden of paying such costs themselves," if any, is imposed on a consultant body

rather than on the participant companies, as Defendant argues.  Def. Response Br. at 27.  The

alleged benefit could not have been conferred upon any individual participant company.  If the

CSRSP program did not exist, companies would still be required to submit data jointly pursuant to the underlying Act. Thus, the financial burden of paying such costs would have been borne collectively by the participant companies that make up the consultative body. Attributing the full contract amount individually to each participant company is thus unsupported by substantial record evidence.

### 2.    *Commerce Double Counted the Benefit to Kukdo Chemical and its Cross-Owned Affiliate, Kukdo Finechem*

Commerce impermissibly double counted the benefit that Kukdo Chemical and its cross-owned affiliate Kukdo Finechem received for the same consultative body. Defendant claims that regardless of cross-ownership, because both Kukdo Chemical and Kukdo Finechem would have each incurred the relevant costs on their own, Commerce did not double count the benefit. *See* Def. Response Br. at 30. Defendant's argument ignores both the record evidence and Commerce's own regulations.

As a factual matter, each Kukdo entity could not have incurred the *same costs* individually because Korean law does not permit an individual company to submit chemical data necessary to register a chemical substance. At a minimum, Kukdo Chemical and Kukdo Finechem were required to submit chemical data jointly, as the record established. *See* Kukdo's August 23, 2024 Supplemental Questionnaire Response, C.R. 362, P.R. 260 at Exhibits S-32-A and S-32-B; *see also* Kukdo Verification Exhibits (Jan. 23, 2025) at Exhibit VE-11, at 82-90, C.R. 639, P.R. 459 (containing the updated Exhibits S-32-A and S-32-B). If the CSRSP program did not exist, any necessary costs to submit chemical data would have been shared between Kukdo Chemical and Kukdo Finechem, as Korean law requires.

For example, if the costs associated with the necessary consulting and toxicity testing are $100 to register a chemical substance, the overall costs for both Kukdo Chemical and Kukdo

13

Finechem submitting the data jointly would have been $100. Under Commerce's benefit analysis, in this scenario Kukdo Chemical and Kukdo Finechem would have each paid $100 (for a total of $200) rather than $100 jointly to submit data. In other words, Commerce (and Defendant) argues that by participating in the CSRSP program, costs associated with registering a chemical substance are double what they would be otherwise. In that sense, there would be no benefit of participating in the program at all because it would have cost more to participate in the program than to just pay the costs. Commerce's double counting presumes, despite this relationship between the companies, that the two companies would be somehow unable to coordinate on a joint effort to have the substance at issue tested and registered, but there is no evidence to support this unstated presumption that is central to Commerce's conclusion.

Commerce's conclusion is also contrary to its own regulations. By finding that Kukdo Finechem is cross-owned by Kukdo Chemical, Commerce presumed that subsidies received by cross-owned companies are jointly attributed to subject merchandise produced by both corporations. *See* 19 CFR § 351.525(b)(6)(ii). As Commerce explained in its preamble to the final rule on CVDs promulgated in 1998:

> "{t}he underlying rationale for attributing subsidies between two separate corporations {with cross-ownership} is that the interests of those two corporations have merged to such a degree that one corporation can use or direct the individual assets (or subsidy benefits) of the other corporation in essentially the same ways it can use its own assets (or subsidy benefits)." <u>Countervailing Duties; Final Rule</u>, 63 Fed. Reg. 65348, 65401 (Dep't Com. Nov. 25, 1998) ("<u>CVD Preamble</u>").

Applying Commerce's underlying rationale to the facts of this case, if Commerce found that the benefit amount of $100 existed under the CSRSP program for registering and testing a chemical substance for Kukdo Chemical, Commerce would attribute the subsidy benefit of $100 to both Kukdo Chemical and its cross-owned company, Kukdo Finechem. In other words, subsidy

14

benefits allegedly conferred upon Kukdo Chemical would already be treated as conferred upon Kukdo Finchem under Commerce's attribution rules.  Again, if Kukdo Chemical and Kukdo Finechem did not participate in the CSRSP program, the overall outlay for the companies would have been $100.  However, under Commerce's benefit calculations, the outlay would be double the amount because they participated in the program.

### D. Purchases of Chinese-origin ECH Does Not Constitute a Countervailable Subsidy and is Not Specific Within the Meaning of the Statute

Defendant mischaracterizes Kukdo Chemical's argument regarding Commerce's countervailable determination of the transnational subsidy provision of ECH for LTAR.  Kukdo Chemical did not attempt to "conjure up an evidentiary standard that is not required by the Act or established in any regulation," as Defendant claims.  Def. Response Br. at 32.  To the contrary, Kukdo Chemical demonstrated that whether it is a transnational subsidy or a domestic subsidy, Commerce was still required to find the necessary elements of a countervailable subsidy.  *See* Kukdo Br. at 30-34.

Other than to simply remove the prohibition on the investigation of transnational subsidies, Commerce did not address how it intends to investigate a transnational subsidy when it issued a *Final Rule*.  *See Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of the Antidumping and Countervailing Duty Laws*, *Final Rule*, 89 Fed. Reg. 20,766, 20,827 (Dept. Commerce Mar. 25, 2024) ("*Final Rule*").  What Commerce did identify in its *Final Rule* was a type of transnational subsidy that it intended to address by removing the prohibition on the investigation of transnational subsidies.  *Id*. at 20,826-27.  Defendant argues that this is just one example of a transnational subsidy, and it is not a statement that Commerce is "limiting its ability to investigate or to find that a transnational program is a countervailable subsidy."  Def. Response Br. at 34.  However, the type of

transnational subsidy that Commerce described in its *Final Rule* is the only enumerated transnational subsidy other than foreign aid. Within this context, Kukdo Chemical demonstrated Commerce's determination of the countervailability of the transnational provision of ECH for LTAR was unsupported by substantial evidence. *See* Kukdo Br. at 28-30. Specifically, this type of transnational subsidy is:

> provided to promote the grantor country as well as the recipient's country manufacturing capacities for a particular industry. We also have observed direct investments in a third country from state-owned enterprises, with backings from state-owned policy banks, promoting the specific grantor country's industry policies.

*Final Rule*, at 20,827. Thus, Commerce seemingly intended to at least establish a nexus between benefits conferred by the recipient and the benefit accrued by the grantor country (China in this instance) and its industry. It is not as though Commerce "created a self-imposed limitation" Def. Response Br. at 33, but the example provides a framework under which Commerce intends to examine an alleged transnational subsidy within the confines of the statute.

As the Defendant agrees, Commerce must still apply the "same statutory and regulatory provisions that it usually examines in LTAR programs" for an alleged transnational subsidy. Def. Response Br. at 35. That is, Commerce must determine that the alleged transnational provision of ECH for LTAR from China constitutes a financial contribution in the form of a provision of goods pursuant to 19 U.S.C. § 1677(5)(D)(iii), is specific within the meaning of 19 U.S.C. §1677(5A)(D)(iii)(II), and confers a benefit under 19 U.S.C. § 1677(5)(E)(iv).

Here, Commerce's determination fell short of meeting the statutory requirements. With respect to financial contribution, Commerce was well aware of the potential pitfalls of requiring the government of a third country (China) to provide the information necessary to determine whether a third country authority provides a financial contribution. *See Final Rule* at 20,827

16

("Some commenters noted practical constraints with respect to transnational subsidy allegations, *particularly the risk of imposing unreasonable evidentiary obligations on . . . the government or other entities of third countries. We acknowledge these concerns*, but believe that it is premature to speculate as to Commerce's future evidentiary standards for allegations or findings on various potential transnational subsidies.") (emphasis added).  Instead of relying on and at least trying to verify or solicit additional information that Kukdo Chemical provided, Commerce chose to resort to facts available because the Government of the People's Republic of China did not respond to Commerce's questionnaire.  *See* Kukdo Br. at 31 (citing Post-Prelim Dec. Memo at 7, P.R. 507).

Furthermore, Commerce relied on two-decade-old, outdated information to find that 60 percent of Kukdo Chemical's ECH purchases were from state-owned suppliers.  *See* Kukdo Br. at 32 (citing Post-Prelim Dec. Memo at 6, fn. 36, P.R. 507).  Defendant claims that Kukdo Chemical is "critiquing {Commerce's} methodology," but the issue is whether Commerce fully considered contradictory evidence in the record.  "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  Without accounting for contradictory record evidence, Commerce relied on outdated and irrelevant information over information Kukdo Chemical supplied based on its own experience (information Commerce apparently was satisfied with, as it did not inquire further on the information it received from Kukdo).  Moreover, if Commerce intended to rely on the fact that one of Kukdo Chemical's purchases was from a state-owned Chinese supplier, Commerce was required to consider this contradictory evidence rather than resorting to facts available, as necessary information was indeed available on the record.  *See* 19 C.F.R. § 351.308(a) (providing that Commerce may rely on facts available when "necessary information is not available on the record.").

17

Regarding specificity, the issue is whether Commerce's finding that the transnational provision of ECH for LTAR from Chinese suppliers was specific to the producers of epoxy resins in Korea is supported by substantial record evidence and in accordance with law.  In the *Post-Preliminary Determination*, Commerce at least tried to fit its specificity analysis within the plain language of the statute.  *See* Post-Prelim Dec. Memo at 8, P.R. 507 (concluding that Korean epoxy resin producers are the predominant users of ECH in Korea based on evidence that the vast majority of ECH consumption in China is in the production of epoxy resin).  This purported analysis comports with the plain language of the statute, because 19 U.S.C § 1677(5A)(D) is premised on Commerce finding specificity of a subsidy that is being provided to "an enterprise or industry *within* the jurisdiction of the authority providing the subsidy." (emphasis added).  However, this analysis is still flawed because it ignores the single-largest consumer of Chinese-origin ECH: the Chinese epoxy resin industry.  *See* Kukdo. Br. at 34 (citing Petitioner New Subsidy Allegations at Exhibit 2, C.R. 425, P.R. 280).  The only logical reason for the Chinese government to subsidize its chemical industry would be to promote and expand its own domestic industry, not the industry of a foreign competitor.  However, Commerce's analysis of whether "an enterprise or industry is a predominant user of the subsidy" lacked any information or analysis regarding whether epoxy resin producers are the predominant users of Chinese-origin ECH and thus lacked specificity.

Defendant argues that Kukdo Chemical's argument is meritless, because Commerce changed its reasoning for finding the provision of ECH for LTAR is *de facto* specific in its *Final Determination*, "relying instead on record evidence showing the proportion of ECH consumed in Korea in the production of epoxy resin."  Def. Response Br. at 37.  Defendant also attempts to fault Kukdo Chemical for referencing Commerce's post-preliminary analysis rather than the

18

Final Determination. *Id.* This is a distinction without a difference. In particular, throughout, Kukdo Chemical has argued that in order to evaluate the specificity of a purported subsidy provided by the Chinese government, Commerce has to account for the significant ECH use and consumption by Chinese industry. *See* Kukdo Post-Prelim Case Brief (Mar. 18, 2025), C.R. 690, P.R. 520 at 14; Kukdo Br. at 34.

In the post-preliminary analysis, Commerce relied on 19 U.S.C. § 1677(5A)(D)(iii)(II) to find that "Korean epoxy resin producers…{are} a predominant user of any benefit from the ECH from China for LTAR subsidy." Post-Prelim Dec. Memo at 8, P.R. 507. In the Final Determination, Commerce continued to find specificity under 19 U.S.C. § 1677(5A)(D)(iii)(II), and again did so without consideration of Chinese industry in the analysis. Final I&D Memo at 86, P.R. 531. Kukdo Chemical's argument that Commerce must account for the industry in the country that bestowed the alleged subsidy (in this case, China) has been consistent throughout, *see* Kukdo Post-Prelim Case Brief (Mar. 18, 2025), C.R. 690, P.R. 520 at 14; Kukdo Br. at 34, and remains unaddressed in Commerce's analysis. Moreover, the need to account for Chinese industry and consumption in the *de facto* specificity analysis is inherent in the statute. In particular, the chapeau of the de facto specificity section provides:

> (D) Domestic subsidy
>
> In determining whether a subsidy (other than a subsidy described in subparagraph (B) or (C)) is a specific subsidy, in law or in fact, *to an enterprise or industry within the jurisdiction of the authority providing the subsidy*, the following guidelines shall apply:

19 U.S.C. § 1677(5A)(D) (emphasis added).

Subsection (iii) further requires Commerce to "take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy." 19 U.S.C. § 1677(5A)(D)(iii). These statutory provisions confirm that the locus of the

19

*de facto* specificity analysis must begin at the level of the authority providing the subsidy – in this case China.  At a bare minimum, to the extent Commerce can reach a *de facto* specificity finding in a transnational subsidy context, the agency must take into account the significant role of industry in China and consumption of ECH by Chinese industry in its analysis.

Defendant further defends Commerce's *Final Determination* because Commerce pointed to record evidence that indicated that "a large proportion of ECH consumption in Korea was used to produce epoxy resin in 2021."  Def. Response Br. at 38 (citing Final I&D Memo at 86, P.R. 531).  This is not a finding of any relevance, because it only establishes that the Korean epoxy resin industry is the predominant user of ECH in Korea.  However, the subsidy at issue is the provision of ECH for LTAR from *China*.  Under the statute, Commerce was required to find that this transnational subsidy provision was specific, and the domestic subsidy provision of the statute, *i.e.,* 19 U.S.C § 1677(5A)(D), provides that any specificity analysis should be limited to a subsidy "to an enterprise or industry within the jurisdiction of the authority providing the subsidy."

### E.    Commerce Unreasonably Resorted To Partial Afa For The First-Ever Analysis Of The Transnational Subsidy Provision Of Goods For LTAR

In the *Final Determination*, Commerce calculated the "benchmark for the ECH from China for LTAR calculation" by calculating "the Korean port-to-destination freight expenses for all purchases of ECH from non-Chinese sources during the POI" and comparing these expenses to "the Korean port-to-destination freight expenses for all purchases of ECH from Chinese sources during the POI."  Post-Prelim Dec. Memo at 7, P.R. 507; *unchanged* in Final I&D Memo at Cmt. 19, P.R. 531.  This analysis assumes that Commerce would have required destination-specific freight expenses for "all purchases of ECH" for both Chinese and non-Chinese sources from Kukdo Chemical.  Defendant argues that this information was "completely missing from

20

Kukdo's response," Def. Response Br. at 43, and, thus, it was appropriate for Commerce to rely on facts available. However, Commerce did not request this specific information from Kukdo until verification. Kukdo Br. at 35-36. Kukdo was apparently expected to anticipate Commerce's unenumerated request for ECH freight data, and to report such data despite the absence of a request for this information. On this basis, Defendant claims that Kukdo Chemical had withheld information that Commerce had requested. *See* Def. Response Br. at 42 (citing Final I&D Memo at 89, P.R. 531). Defendant's justification is nonsensical, and completely ignores the fact that Commerce *never requested* such information. Commerce ultimately decided for the first time that it required port-to-destination freight values for each sales transaction in the *Final Determination*. Thus, any gap in the record was the result of Commerce failing to request the information it later found necessary, rather than by Kukdo Chemical's alleged failure to provide it. As such, Commerce's AFA finding cannot be sustained.

21

III.    **CONCLUSION**

For the foregoing reasons, Kukdo Chemical respectfully requests that this Court hold the foregoing aspects of the *Final Determination* to be unsupported by substantial evidence and otherwise not in accordance with law.  Kukdo Chemical further requests that this Court remand the agency's determination with instructions to Commerce to correct its errors and to provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ J. David Park
J. David Park
Henry D. Almond
Kang Woo Lee
Jennifer Farrin

***Counsel to Kukdo Chemical Co., Ltd.***

ARNOLD & PORTER KAYE SCHOLER LLP
601 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
PHONE:  (202) 942-5646
FAX:  (202) 942-5999

**Dated:  July 27, 2026**

22

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| KUMHO P & B CHEMICALS INC., )<br><br>*Plaintiff,* )<br><br>and )<br><br>KUKDO CHEMICAL CO., LTD. and )<br>U.S. EPOXY RESIN PRODUCERS *AD HOC* )<br>COALITION )<br><br>*Consolidated Plaintiffs,* )<br><br>v. )<br><br>UNITED STATES, )<br><br>*Defendant,* )<br><br>and )<br><br>U.S. EPOXY RESIN PRODUCERS *AD HOC* )<br>COALITION and, )<br>KUKDO CHEMICAL CO., LTD. )<br><br>*Defendant-Intervenors.* )<br> ) | **Consolidated Court No.**<br>**25-cv-00143-GSK** |

## CERTIFICATION OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned hereby certifies that the attached Reply Brief in Support of Consolidated Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, filed on July 27, 2026, contains 6,287 words, exclusive of the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing system used to prepare this brief, and inclusive of the words in the embedded images, counted manually.  The brief therefore complies with the maximum 7,000 word count limitation set forth in the Court's Chambers Procedures.

By:    /s/ J. David Park
          J. DAVID PARK

**Dated:  July 27, 2026**